The Law Offices of Avrum J. Rosen, PLLC
Attorneys for the Debtors
38 New Street
Huntington, New York 11743
Avrum J. Rosen
(631) 423-8527


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:

LT 266 THIRD AVENUE, LLC,                          Chapter 11
                                                   Case No.: 11-11386-jmp
                          Debtor.
-----------------------------------------------------------x

In re:                                             Chapter 11

NK 266 THIRD AVENUE, LLC,                          Case No.: 11-11387-jmp

                          Debtor.
-----------------------------------------------------------x


## <u>DEBTORS' JOINT PLAN OF REORGANIZATION</u>

# TABLE OF CONTENTS

INTRODUCTION ..............................................................................................................1

ARTICLE I

Definitions, Rules Of Interpretation, Computation Of Time
And Governing Law ......................................................................................................1

    A.        Scope of Definitions; Rules of Construction ..........................................1
    B.        Definitions............................................................................................1
    C.        Rules of Interpretation ......................................................................12
    D.        Computation of Time ........................................................................12
    E.        Governing Law .................................................................................12

ARTICLE II

Treatment of Administrative Expense Claims..............................................................12

Administrative Expense Claims...................................................................................12

ARTICLE III

Treatment of Priority Tax Claims ...............................................................................13

Priority Tax Claims ...................................................................................................13

ARTICLE IV

Classification of Claims and Interests.........................................................................14

    4.1      Designation of Classes Pursuant to Sections 1122 and 1123(a)(1) of the
            Bankruptcy Code ..............................................................................14
    4.2      Allowed Amount in a Particular Class................................................14
    4.3      Classes..............................................................................................14

ARTICLE V

Treatment of Claims and Interests ..............................................................................14

    5.1      Class 1:  Secured Claims....................................................................14
    5.2      Class 2:  General Unsecured Claims...................................................16
    5.4      Class 3:  Interests..............................................................................17

ARTICLE VI

Identification of Classes of Claims and
Interests Impaired and Unimpaired Under The Plan .....................................................17

    6.1      Classes of Claims Impaired by the Plan and
            Entitled to Vote.................................................................................17
    6.2      Acceptance by an Impaired Class of Claims .......................................17
    6.3      Class of Claims Unimpaired by this Plan Is Conclusively

Presumed to Accept this Plan ................................................................17

6.3 Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code
("Cram Down")................................................................................17

ARTICLE VII
Controversy With Respect to Impairment .......................................................18

ARTICLE VIII
Unexpired Leases and Executory Contracts ....................................................18

8.1 Assumption and Rejection of Executory Contracts and
Unexpired Leases.............................................................................18
8.2 Bar Date for Rejection Damage Claims...............................................18

ARTICLE IX
Means for Effectuating the Plan
Implementation of the Plan.........................................................................18

9.1 Sale of Real Property in Accordance With the
Auction Sale Procedures....................................................................18
9.2 Transfer Taxes ...............................................................................19
9.3 Transfer of Assets ..........................................................................19
9.4 Cooperation of Debtors....................................................................20
9.5 Funding ........................................................................................20
9.6 Management of the Debtors ..............................................................20
9.7 Execution of Documents...................................................................20
9.8 Filing of Documents ........................................................................20
9.9 Transaction on Business Days ...........................................................20
9.10 Implementation ..............................................................................20
9.11 Preservation and Vesting of Claims, Rights, Demands
and Causes of Action .......................................................................21
9.12 Recoveries.....................................................................................21
9.13 Dissolution of Debtors .....................................................................21

ARTICLE X
Distributions; Disputed Claims Reserve ........................................................22

10.1 Post-confirmation Estate ..................................................................22
10.2 Timing of Distributions Due Under Plan...............................................22
10.3 Manner of Distributions....................................................................22
10.4 Cash Payments ..............................................................................22
10.5 Disputed Claims Reserve .................................................................22
10.6 Payment of Statutory Fees ...............................................................23
10.7 No Interest.....................................................................................23
10.8 Withholding of Taxes .......................................................................23
10.9 Undeliverable or Unclaimed Distributions ............................................24
10.10 Post Effective Date Services by Professionals......................................24

ARTICLE XI
Procedures for Resolving Disputed Claims .................................................................25

11.1   Objections to Claims.................................................................................25
11.2   Procedure ................................................................................................25
11.3   Payments and Distributions with Respect to Disputed Claims...........25
11.4   Claims Reserve – Estimation ................................................................25
11.5   Distributions After Allowance of Disputed Claims..............................26
11.6   Distributions After Disallowance of Disputed Claims .......................26
11.7   Setoffs and Recoupments.......................................................................26

ARTICLE XII
Injunction, Release and Exculpation........................................................................26

12.1   Injunction ................................................................................................26
12.2   Release ....................................................................................................27
12.3   Exculpation .............................................................................................27

ARTICLE XIII
Conditions Precedent to the Confirmation Order
and the Effective Date of the Plan ...........................................................................28

13.1   Condition Precedent to Entry of the Confirmation Order....................28
13.2   Conditions Precedent to the Effective Date .........................................28
13.3   Debtors' Right to Waive Conditions Precedent....................................28

ARTICLE XIV
Miscellaneous Provisions.........................................................................................28

14.1   Bankruptcy Court to Retain Jurisdiction..............................................28
14.2   Binding Effect of the Plan......................................................................30
14.3   Fractional Cents .....................................................................................30
14.4   Successors and Assigns..........................................................................30
14.5   Blank Ballots...........................................................................................30
14.6   Authorization of Corporate Action .......................................................30
14.7   Withdrawal of the Plan ..........................................................................31
14.8   Captions ..................................................................................................31
14.9   Method of Notice ...................................................................................31
14.10  Amendments and Modifications to Plan................................................32
14.11  Section 1125(e) of the Bankruptcy Code..............................................32
14.12  Entire Agreement ...................................................................................32
14.13  Post-Confirmation Obligations .............................................................33

# INTRODUCTION

NK 266 THIRD AVENUE, LLC, AND LT 266 THIRD AVENUE, the Debtors and Debtors-in-Possession, (collectively, the "Debtors"),  by their counsel, The Law Offices of Avrum J. Rosen, PLLC, proposes the following Joint Plan of Reorganization (the "Plan") pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C. Section 101 et. seq. for the resolution of outstanding Claims and Interests. The Debtors will request that their two cases be substantively consolidated. Reference is made to the Debtors' Disclosure Statement filed together with the Plan, and should be reviewed in connection with voting on the Plan.

# ARTICLE I

## Definitions, Rules of Interpretation,
## Computation of Time and Governing Law

**A.      Scope Of Definitions; Rules Of Construction**

For purposes of the Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in the Introduction, Article I or elsewhere in the Plan.  Any term used in the Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.  Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

**B.      Definitions**

1.1.    "Administrative Expense Claim" means an Allowed Claim against the Debtors entitled to priority in accordance with section 503(b), 507(a)(1) or 1114(e)(2) of the Bankruptcy Code, including without limitation (a) every cost or expense of administration of the Chapter 11 Case, including any actual and necessary costs and expenses incurred after the Filing Date of preserving the Estate and operating the business of the Debtors (such as wages, salaries or commissions for services); and (b) compensation for legal, financial, advisory, accounting and other services and reimbursement of expenses awarded or allowed under sections 330(a) or 331 of the Bankruptcy Code.

1.2.    "Affiliate" shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

1.3.    "Allowed Amount" shall mean the amount of an Allowed Claim.

1.4.    "Allowed Claim" or "Allowed Interest" means:

(a)      With respect to pre-Filing Date Claims and Interests, (i) any Claim or Interest, proof of which is timely filed, or (ii) any Claim or Interest that has been or is hereafter listed in the Schedules as neither disputed, contingent or unliquidated; *provided, however*, that

with respect to any Claim or Interest described in clauses (i) or (ii) above, such Claim or Interest shall be allowed only if (x) no objection to the allowance thereof is interposed by the Debtors, the Post-confirmation Debtors or any other party-in-interest within any applicable time period fixed under the Plan, the Bankruptcy Code, the Bankruptcy Rules or by the Bankruptcy Court, or (y) such an objection is interposed but the Claim or Interest has been allowed (or to the extent it has been allowed) by a Final Order (but only if such allowance was not solely for the purpose of voting to accept or reject the Plan); and

(b) <u>With respect to Administrative Expense Claims</u>, "Allowed" means any holder of an Administrative Expense Claim that is determined to hold a claim entitled to treatment as an Allowed Administrative Expense Claim; *provided, however*, that with respect to any Claimant seeking allowance of an Administrative Expense Claim the amount of which is not agreed to in writing by the Debtors or the Post-confirmation Debtors, or otherwise allowed by a Final Order, such Claimant will hold an "Allowed" Administrative Expense Claim only if such Claimant duly and timely files proof of its Administrative Expense Claim with the Bankruptcy Court and serves a copy thereof upon (i) the Debtors' counsel, Law Offices of Avrum J. Rosen, 38 New Street, Huntington, New York 11743, Attn: Avrum J. Rosen, Esq., (ii) Vasos's counsel, Proskouer, Rose LLP, <u>and</u> (iv) the United States Trustee, no later than fifteen (15) days following the Confirmation Date; *provided, however*, that with respect to any such timely filed Administrative Expense Claim, such Claim shall be Allowed only if (x) the amount is agreed to in writing by the Debtors or Post-confirmation Debtors and such Claimant, (y) no objection to the allowance thereof is interposed by the Debtors or the Post-confirmation Debtors on or before thirty (30) days after the Effective Date, or such other date as may be established by the Bankruptcy Court, or (z) if an objection is interposed, (aa) such Administrative Expense Claim has been allowed (or to the extent it has been allowed) by a Final Order, or (bb) such objection is withdrawn. With respect to Claimants seeking allowance of Professional Fees as Administrative Expense Claims, all applications for final compensation of Professionals for services rendered and for reimbursement of expenses incurred for any period prior to the Confirmation Date must be filed no later than thirty (30) days following the Confirmation Date, and shall be Allowed following entry by the Bankruptcy Court of any order or orders allowing same (or to the extent it has been previously allowed). The Confirmation Order shall specifically provide that each Administrative Expense Claim Claimant who seeks allowance of an Administrative Expense Claim (i) that is not either agreed to in writing by the Debtors or the Post-confirmation Debtors and the Claimant, or otherwise allowed by a Final Order, and that fails to timely and duly file a proof of its Administrative Expense Claim, or (ii) for Professional Fees that fails to timely and duly institute a request for a hearing thereon, as provided for in the Plan, shall have its Claim expunged and shall thereafter be forever barred from asserting any such Administrative Expense Claim. Except as otherwise specified in the Plan or a Final Order of the Bankruptcy Court, the Allowed Amount of an Administrative Expense Claim shall not include interest on such Claim from and after the Filing Date.

1.5. "Auction" means the auction for the sale of the Real Property to be held if the Debtors determine in their discretion, that it has received at least one other submission from a Qualified Bidder which auction will take place after the Confirmation Date at _____ at such date and time as shall be fixed pursuant to the provisions of the Confirmation Order or the Sale Order, but in no event later than twenty (20) days after the Confirmation Date or such later

date as may be agreed to in writing by the Debtors or Post-confirmation Debtors, or established in accordance with the Auction Sale Procedures.

1.6. "Auction Sale Procedures" means those procedures annexed hereto as <u>Exhibit "A"</u>, which are incorporated herein by reference and approved as part of the Plan, which will govern the conduct of the Auction, the qualification of bidders to bid at the Auction and other matters related thereto.

1.7. "Back-up Bid" means the bid of the Qualified Bidder submitting the second highest bid as determined by the Post-Confirmation Debtors.

1.8. "Back-up Bidder" means the Qualified Bidder who submits the Back-up Bid at the Auction.

1.9. "Back-up Closing Date" means, except as otherwise provided in the Auction Sale Procedures, if for any reason the Qualified Bidder submitting the Successful Bid fails to timely close the sale of the Real Property and the Post-confirmation Debtors determine in their discretion, to proceed with the Back-up Bid, the date upon which the Back-up Bidder shall be required to close upon the sale of the Real Property, which shall be the later of (a) the Closing Date, or (b) five (5) Business Days after notice of the Successful Bidder's default in closing, with TIME BEING OF THE ESSENCE AS TO THE BACK-UP BIDDER'S OBLIGATION TO CLOSE ON SUCH DATE AND TO PAY THE BALANCE OF THE PURCHASE PRICE AT SUCH CLOSING.

1.10. "Ballot" means the voting form distributed to Holders of Claims or Interests in Classes that are Impaired and entitled to vote on the Plan for the purpose of indicating acceptance or rejection of the Plan.

1.11. "Ballot Date" means the date set by the Bankruptcy Court for receipt of Ballots indicating acceptance or rejection of the Plan.

1.12. "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*, and all amendments thereto.

1.13. "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York, located at One Bowling Green, New York, New York, having jurisdiction over the Chapter 11 Case, or any such other court as may hereafter exercise primary jurisdiction over the Chapter 11 Case.

1.14. "Bankruptcy Rules" means, collectively (a) the Federal Rules of Bankruptcy Procedure recommended by the Judicial Conference of the United States and prescribed by the Supreme Court of the United States, effective August 1, 1983, in accordance with the provisions of section 2075 of title 28 of the United States Code, and all amendments thereto, and (b) the local Bankruptcy Rules for the Southern District of New York, as now in effect or hereafter amended.

1.15.    "Bar Date" means the final date established by the Bankruptcy Court pursuant to Bankruptcy Rule 3003(c), for filing timely proofs of Claim arising prior to the Filing Date.

1.16.    "Bar Date Order" means an Order entered by the Bankruptcy Court in the Chapter 11 Case establishing the Bar Date.

1.17.    Intentionally left blank.

1.18.    "Business Day" means any day other than a Saturday, Sunday or "legal holiday" as defined in Bankruptcy Rule 9006(a).

1.19.    "Cash" means cash and cash equivalents, including but not limited to bank deposits, checks, and other similar items in each case denominated in United States dollars.

1.20.    "Causes of Action" means any and all actions, causes of action, suits, debts, rights to payment and claims under any insurance policies, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise.

1.21.    "Chapter 11 Case" means the Debtors' cases under Chapter 11 of the Bankruptcy Code currently pending before the Bankruptcy Court under case caption styled *In re LT 266 Third Avenue*, Case No. 11-11386 and *In re NK 266 Third Avenue*, Case No. 11-11387.

1.22.    "Claim" means a claim against a Debtor, whether or not asserted, known or unknown, as such term is defined in section 101(5) of the Bankruptcy Code.

1.23.    "Claimant" means the holder of a Claim or Interest.

1.24.    "Class" means a group of Claims or Interests which are substantially similar in nature and are grouped together for similar treatment pursuant to the Plan.

1.25.    "Closing" means the closing of the sale of the Real Property to the Successful Bidder or, as applicable, the Back-up Bidder at which point title to the Real Property will be transferred to the Successful Bidder or, as applicable, the Back-up Bidder, in accordance with the terms contained herein, in the Auction Sale Procedures, and in the Confirmation Order.  The Closing, unless ordered otherwise by the Bankruptcy Court, shall take place on the Closing Date for the Successful Bidder and, if applicable, the Back-up Closing Date for the Back-up Bidder.

1.26.    "Closing Date" means the date of the Closing, which shall take place within five (5) Business Days following the Auction, or such later date established pursuant to the Auction Sale Procedures or order of the Court, with TIME BEING OF THE ESSENCE AS TO THE SUCCESSFUL BIDDER'S OBLIGATION TO CLOSE ON SUCH DATE AND TO PAY THE BALANCE OF THE PURCHASE PRICE AT THE CLOSING.

1.27.    "Conditions Precedent to the Effective Date" means all of the conditions set forth in Article XIII of the Plan which must be satisfied by the Debtors prior to the Effective Date.

1.28.    "Confirmation Date" means the date upon which the Confirmation Order is entered on the docket maintained by the Clerk of the Bankruptcy Court with respect to the Chapter 11 Case.

1.29.    "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code.

1.30.    "Consummation" means the accomplishment of all the Conditions Precedent to the Effective Date identified at Section 13.2 of the Plan and the Closing having occurred.

1.31.    "Credit Bid" means a bid by Vasos to acquire the Real Property at the Auction for no cash, except for the payment of the Break-uip fee and reimbursable expenses, by crediting the amount of such bid, if successful, against the amount of the Vasos Secured Claim.

1.32.    "Creditor" means any Entity that is the Holder of a Claim arising on or before the Filing Date or under sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.33.    "Debtors" mean In re LT 266 Third Avenue and In re NK 266 Third Avenue.

1.34.    "Deed" means the a bargain and sale deed without covenants to the Real Property in form and substance reasonably acceptable to the Successful Bidder or Back-up Bidder, if applicable, and its title insurer, that is to be executed by the Debtors or the Post-confirmation Debtors and delivered at the Closing for recording in the Register's Office.

1.35.    "Disclosure Statement" means the document filed with the Bankruptcy Court by the Debtors in connection with the Plan and the Chapter 11 Case pursuant to section 1125 of the Bankruptcy Code and approved by order of the Bankruptcy Court as containing "adequate information" as that term is defined at section 1125(a)(1) of the Bankruptcy Code, and any exhibits annexed thereto and any documents delivered or filed in connection therewith, as the same may be amended or modified from time to time by any duly authorized or allowed amendment or modification.

1.36.    "Disputed Claim" or "Disputed Interest" means any Claim or Interest designated as disputed, contingent or unliquidated on the Schedules and/or any Claim or Interest against which an objection to the allowance thereof has been interposed, which objection has not been determined by a Final Order.

1.37.    "Disputed Claims Reserve" means the reserve to be established for Disputed Claims in accordance with the terms hereof, which reserve shall be established by the Post-confirmation Debtors within five (5) Business Days after the later of the Closing Date or, if applicable, the Back-up Closing Date.

1.38.    "Distribution" means a distribution of Cash pursuant to the Plan.

1.39.    "Distribution Date" shall mean the Closing Date or the Back-up Closing Date, if applicable, and such other dates occurring as soon thereafter as reasonably practicable after the Closing when distributions under the Plan shall commence, without further Bankruptcy Court Order, and thereafter shall mean such other dates on which distributions are made to Holders of Allowed Claims in accordance with the terms hereof.

1.40.    "Distribution Fund" means the fund of Cash to be established and administered by the Post-confirmation Debtors.

1.41.    "Effective Date" means the date that is fourteen (14) days after the Confirmation Date, or, if such date is not a Business Day, the next succeeding Business Day; *provided, however*, that if all Conditions Precedent to the Effective Date have not been satisfied or waived, if subject to waiver, on or prior to such date, then the Effective Date shall be the next succeeding date on which all such Conditions Precedent to the Effective Date have been satisfied or waived, if subject to waiver.

1.42.    "Entity" means any Person, individual, corporation, limited or general partnership, limited liability company, joint venture, association, joint stock company, estate, trust, trustee, United States trustee, unincorporated organization, government, governmental unit (as defined in section 101(27) of the Bankruptcy Code), agency or political subdivision thereof.

1.43.    "Estate" means the collective estate created in Debtors' Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

1.44.    "Filing Date" means March 29, 2011, the date on which the Chapter 11 Cases were commenced by the filing of voluntary petitions for relief under Chapter 11 of the Bankruptcy Code by the Debtors.

1.45.    "Final Decree" means the order to be entered by the Bankruptcy Court closing the Chapter 11 Case in accordance with section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022.

1.46.    "Final Distribution Date" means the final Distribution Date, which shall occur after all objections to all Claims have been resolved by a Final Order or otherwise in accordance with the terms hereof, and all Post-confirmation Estate Assets have been converted to Cash or abandoned and are able to be finally distributed to Holders of Allowed Claims in accordance with the terms hereof.

1.47.    "Final Order" means an order, ruling or judgment of the Bankruptcy Court or any other court of competent jurisdiction (a) as to which the time to appeal, petition for *certiorari,* or move for reargument or rehearing has expired and as to which no order, ruling or judgment no appeal, petition for *certiorari*, or other proceedings for reargument or rehearing shall then be pending, or (b) as to which any right to appeal, petition for *certiorari*, reargue, or rehear shall have been waived in writing satisfactory to Debtors or, on or after the Effective Date, the Post-confirmation Debtors, or (c) as to which, in the event that an appeal, writ of *certiorari*, or

reargument or rehearing thereof there shall have been a determination denying any relief by the highest court to which such order was appealed, or *certiorari*, reargument or rehearing granted, and the time to further appeal, petition for *certiorari* or move for reargument or rehearing shall have expired; *provided, however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be filed with respect to such order shall not render such order a non-Final Order.

1.48.    "General Unsecured Claim" means any Claim which does not qualify as an Administrative Expense Claim, Priority Claim, the Vasos Secured Claim, or a Priority Tax Claim and which is not an Interest.

1.49.    "General Unsecured Claim Class 2 Distribution" means the sum of $400,000 to be contributed by the Plan Contributors as part of the Plan Contribution to be distributed Pro Rata to each Holder of an Allowed General Unsecured Claim in accordance with Section 5.4 of the Plan.

1.50.    "Holder" means any Entity that holds a Claim or Interest.

1.51.    "Impaired", when used with respect to any Claim, Interest or Class, has the same meaning as that contained in section 1124 of the Bankruptcy Code.

1.52.    "Insider" shall have the meaning given to such term in section 101(31) of the Bankruptcy Code.

1.53.    "Interest" means any equity interest in the Debtors, including, but not limited to, membership interests, shares of common stock, any stock rights, options, warrants, calls, subscriptions, or other similar rights, agreements, or commitments or other outstanding agreements obligating the Debtors to issue, transfer, or sell any shares of any type of stock of Debtors.

1.54.    "Lien" means with respect to an asset or interest of the Debtors, any mortgage, lien, pledge, charge, encumbrance or other security interest of any kind affecting such asset.

1.55.    "Maximum Amount" means, with respect to any Disputed Claim: (a) the amount agreed to by the Debtors or the Post-confirmation Debtors and the Holder of such Claim; (b) the amount, if any, estimated or determined by the Bankruptcy Court in accordance with Bankruptcy Code sections 502(c) or 503(b) in the event such Disputed Claim is a Disputed Administrative/Priority Claim; or (c) absent any such agreement, estimation or determination, the liquidated amount set forth in the proof of claim filed by the Holder of such Claim, or if no amount is so set forth, the amount estimated by the Debtors or Post-confirmation Debtors.

1.56.    "Operating Expenses" shall mean all costs and expenses related to the (a) administration of the Post-confirmation Estate pursuant to the Plan, (b) the investigation, enforcement, abandonment, prosecution, resolution, defense against, compromise and settlement of all Disputed Claims and objections thereto, (c) the sale, abandonment, and collection of all

non-Cash Post-Confirmation Estate Assets, and (d) the wind-down of the Bankruptcy Case, including without limitation, the expenses of the Post-confirmation Debtors in connection with the foregoing (including the fees and expenses of all professionals).

1.57.    "Person" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

1.58.    "Plan" means this plan of liquidation, and any exhibits annexed hereto and any documents delivered in connection herewith, as the same may be amended or modified from time to time as and to the extent permitted herein or by the Bankruptcy Court and/or the Bankruptcy Code.

1.59.    "Plan Contribution" means the funds to be contributed by the Purchaser or the Successful Bidder to fund (a) the General Unsecured Claim Class 4 Distribution, (b) Allowed Class 3 Priority Claims, plus (c) payment of all U.S. Trustee fees and the Allowed Administrative Expense Claims of Debtors' Professionals, in accordance with the terms hereof, which funds will be segregated from the Distribution Fund.

1.60.    "Post-confirmation Estate" shall mean the post-Confirmation Date estate of the Debtors comprised of (a) the Post-confirmation Estate Assets, (b) such additional or different corpus, assets or investments, if any, as the Post-confirmation Debtors may from time to time acquire and/or hold and administer under the provisions of the Plan and (c) any and all dividends, rents, royalties, income, proceeds, and other receipts of, from or attributable to the foregoing.

1.61.    "Post-confirmation Estate Assets" shall mean all of the Debtors' (a) Cash held in the accounts maintained by the Debtors as of the Effective Date, (b) any other Property as of the Confirmation Date, and (c) the Real Property prior to the Closing.

1.62.    "Post-confirmation Debtors" means the Debtors from and after the Confirmation Date.

1.63.    "Purchaser" shall mean the proposed Stalking Horse Bidder under the Sales Motion or any successful Bidder at the auction.

1.64.    "Priority Claim" means any Claim, other than a Priority Tax Claim or an Administrative Expense Claim, which is entitled to priority treatment under section 507(a) of the Bankruptcy Code.

1.65.    "Priority Tax Claim" means any Claim which is entitled to priority treatment under section 507(a)(8) of the Bankruptcy Code, including any Real Estate Taxes.

1.66.    "Professional Fees" means any claim for compensation and/or reimbursement of expenses under sections 330, 331 or 503(b) of the Bankruptcy Code by any Professionals which must be applied for in accordance with the Bankruptcy Code and the Plan and must be allowed by the Bankruptcy Court before payment thereof may be made.

1.67. "Professionals" means any attorneys, accountants, appraisers, consultants, and other professionals retained or to be compensated pursuant to an order of the Bankruptcy Court pursuant to, *inter alia*, sections 327, 328, 330, 503(b) or 1103 of the Bankruptcy Code in the Chapter 11 Case.

1.68. "Property" means all of Debtors' assets other than the Real Property and any personal property not subject to any Lien of Vasos, including without limitation, any and all of the Debtors' accounts receivable, inventory, machinery and equipment, vehicles, contracts, tax refunds, interests, Cash, Causes of Action, products, general intangibles, books and records, and other assets and personal property of any kind or description.

1.69. "Pro Rata" means proportionally, so that the ratio of the amount of consideration distributed on account of a particular Allowed Claim to the Allowed Amount of the Claim is the same as the ratio of the amount of consideration distributed on account of all Allowed Claims of the Class in which the particular Claim is included to the aggregate amount of the Allowed Claims of the Class.

1.70. "Qualified Bidder" means Alchemy Gramercy LLC, Stabfund, and Vasos, (as to their rigjt to credit bid in their own collateral) and any other Entity which meets the criteria set forth in the Auction Sale Procedures and qualifies to bid for the Real Property at the Auction.

1.71. "Qualified Bidder Deadline" means the deadline to be established by the Bankruptcy Court in the Confirmation Order for Entities to deliver their written submissions to counsel to the Debtors, Law Offices of Avrum J. Rosen, PLLC, and the Deposit to Law Offices of Avrum J. Rosen, PLLC as escrow agent, as required pursuant to and in accordance with the Auction Sale Procedures in order to qualify as a Qualified Bidder.

1.72. "Real Estate Taxes" means any real estate taxes, assessments or charges that are accrued and owing by the Debtors to any taxing or governmental authority in connection with the Real Property as of the Closing Date and that are a Lien on the Real Property.

1.73. "Real Property" means, collectively, the real property owned by the Debtors at 266-270 Third Avenue, New York, New York .

1.74. "Register's Office" means the Office of the City Register, New York County.

1.75. "Rejection Damage Claim" means any Claim arising from the rejection of any executory contract or unexpired lease in accordance with Article VIII of the Plan.

1.76. "Rejection Damages Bar Date" means the date established under the Bar Date Order for filing timely proofs of Claim for any Rejection Damage Claim which is the date that is the later of either (a) the Bar Date; (b) the first business day that is at least fifteen (15) calendar days after entry of the order authorizing the rejection of the respective executory contract or unexpired lease; or (c) such date as the Court may fix in the applicable order authorizing such rejection.

1.77.   "Related Documents" means the Plan and any documents necessary to consummate the transactions contemplated by the Plan.

1.78.   "Schedules" means the schedules of assets and liabilities in accordance with Bankruptcy Rule 1007(b), filed by the Debtors with the Bankruptcy Court (as same may have been or may be amended from time to time in accordance with Bankruptcy Rule 1009).

1.79.   "Secured Claim" means a claim that is either secured by a lien on property in which a Debtor have an interest pursuant to section 506 or 1111(b) of the Bankruptcy Code or subject to setoff under section 553 of the Bankruptcy Code.

1.80.   "Stabfund" means StabFund (USA) Corp., mortgagee of real property known as 276-280 Third Avenue, New York, New York, inclusive of all Air Rights and other Development Rights appurtenant to the 266 Third Parcel and the 276 Third Parcel (collectively, the "Development Parcels"), the Development Rights appurtenant to 266 Third Avenue, 272 Third Avenue, 274 Third Avenue and 158 East 22nd Street, New York, New York (the "266/272/274/158 Development Rights").

1.81.   "Successful Bidder" means a Qualified Bidder that made the highest and best bid for the Real Property.

1.82.   "Transfer Taxes" means any and all real estate transfer, stamp, sales, use, mortgage recording, or similar taxes, if and as applicable, that may be incurred or arise in connection with the transactions contemplated by the Plan.

1.83.   "Unimpaired" means any Class of Claims or Interests that is not Impaired.

1.84.   "United States Trustee" means any and all representatives of the Office of the United States Trustee for the Southern District of New York, the entity empowered to administer the Chapter 11 Case.

1.85.   "U.S. Trustee Fees" means all fees assessed against the Debtors' Estate and the Post-Confirmation Estate under 28 U.S.C. §1930(a)(6).

1.86.    "Vasos" means Vasos, LLC, mortgagee of real property known as 266-270 Third Avenue, New York, New York a/k/a 266 Third Avenue, New York, New York a/k/a Block 877, Lot 44.

## C. Rules Of Interpretation

For purposes of the Plan (1) any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (2) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified or supplemented, (3) unless otherwise specified, all references in the Plan to Sections, Articles, Schedules and Exhibits are references to Sections, Articles, Schedules and Exhibits of or to the Plan, (4) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan, (5) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan, and (6) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

## D. Computation Of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## E. Governing Law

Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of, the State of New York, without giving effect to its conflicts of law provisions or choice of law rules.

## ARTICLE II

## Treatment of Administrative Expense Claims

Administrative Expense Claims.  Administrative Expense Claims are not classified under the Plan in accordance with section 1123(a)(1) of the Bankruptcy Code.  Each Allowed Administrative Expense Claim shall be paid in full in Cash on the later of (a) the Effective Date, or (b) in the event such Administrative Expense Claim is not Allowed as of the Effective Date, the date on which the Bankruptcy Court enters an order allowing such Administrative Expense Claim, or (c) such later date as the Debtors (or, if it is after the Effective Date, the Post-confirmation Debtors) and the Holder of such Allowed Administrative Expense Claim otherwise agree in writing, or as soon thereafter as is practicable; *provided, however*, that Allowed Administrative Expense Claims incurred by the Debtors or the Post-confirmation Debtors after the Confirmation Date, including, without limitation, claims for Professionals' Fees, shall not be subject to application and may be paid by the Debtors or the Post-confirmation Debtors, as the case may be, in the ordinary course of business and without further Bankruptcy Court approval.

Any Claimant seeking allowance of an Administrative Expense Claim for an Administrative Expense Claim the amount of which is not agreed to in writing by the Debtors or

the Post-confirmation Debtors and the Claimant, or otherwise Allowed by a Final Order, <u>must</u> file proof of its Administrative Expense Claim with the Bankruptcy Court and serve a copy thereof upon (a) the Debtors' counsel, Law Offices of Avrum J. Rosen, PLLC, Attn: Avrum J. Rosen, Esq., (b) Vasos's counsel, Gregory Messer, Esq., 26 Court Street, Brooklyn, New York 11242, and (c) the United States Trustee, no later than fifteen (15) days following the Confirmation Date; *provided, however*, that with respect to any such timely filed Administrative Expense Claim, such Claim shall be Allowed only if (i) the amount is agreed to in writing by the Debtors or the Post-confirmation Debtors and such Claimant, (ii) no objection to the allowance thereof is interposed by the Debtors or the Post-confirmation Debtors on or before thirty (30) days after the Effective Date, or such other date as may be established by the Bankruptcy Court, or (iii) if an objection is interposed, (x) such Administrative Expense Claim has been allowed by a Final Order, or (y) such objection is withdrawn. With respect to Claimants seeking allowance of Professional Fees as Administrative Expense Claims, all applications for final compensation of Professionals for services rendered and for reimbursement of expenses incurred for any period prior to the Confirmation Date must be filed no later than thirty (30) days following the Confirmation Date, and shall be deemed Allowed following entry by the Bankruptcy Court of any final order or orders allowing same.

Each Administrative Expense Claim Claimant who seeks allowance of an Administrative Expense Claim (a) that is not agreed to in writing by the Debtors or the Post-confirmation Debtors and the Claimant, or otherwise allowed by a Final Order, and that fails to timely and duly file a proof of its Administrative Expense Claim, or (b) for Professional Fees that fails to timely and duly institute a request for a hearing thereon, as provided for in the Plan, shall have its Claim expunged and shall thereafter be forever barred from asserting any such Administrative Expense Claim. Except as otherwise specified in the Plan or a Final Order of the Bankruptcy Court, the Allowed Amount of an Allowed Administrative Expense Claim shall not include interest on such Claim from and after the Filing Date. The Allowed Administrative Expense Claims of the Debtors' Professionals and the U.S. Trustee Fees will be paid from the Plan Contribution.

## ARTICLE III

### Treatment of Priority Tax Claims

<u>Priority Tax Claims</u>. As of the filing of the Plan, no Priority Tax Claims were filed. Any Allowed Priority Tax Claims will be paid in full, with statutory interest, on the Effective date.

## ARTICLE IV

### Classification of Claims and Interests

4.1. <u>Designation of Classes Pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code</u>. Set forth at Section 4.3 below is the designation of Classes of Claims and Interests. Administrative Expense Claims and Priority Tax Claims of the kinds specified in sections 507(a)(1) and 507(a)(8) of the Bankruptcy Code (set forth in Articles II and III above)

have not been classified and are excluded from classification in accordance with section 1123(a)(1) of the Bankruptcy Code.

4.2.    <u>Allowed Amount in a Particular Class</u>.  An Allowed Claim or Allowed Interest is part of a particular Class only to the extent of the amount that the Allowed Claim or Allowed Interest qualifies for treatment within that Class and is in a different Class to the extent that the remaining amount of the Allowed Claim or Allowed Interest qualifies for treatment within that different Class.

4.3.    Classes.  All Allowed Claims and Allowed Interests shall be divided into the following Classes, which Classes shall be mutually exclusive:

(a)    Class 1.    Class 1 consists of the Allowed Vasos Secured Claim, which is secured by a valid mortgage Lien against the Real Property.  Vasos is recognized as a Qualified Bidder that is authorized and permitted to make a Credit Bid up to the full amount of the Allowed Vasos Secured Claim.

(b)    Class 2.    Class 2 consists of all General Unsecured Claims.

(c)    Class 3.    Class 3 consists of all Interests.

## ARTICLE V

## Treatment of Claims and Interests

5.1.    Class 1:  Secured Claim

Treatment.  Class 1 consists of the Allowed Secured Claim of Stabfund.

In the event that the Successful Bidder or Back-up Bidder, if applicable, acquiring the Real Property is an Entity other than Vasos, then Vasos shall receive all Cash paid by such Entity for the auction of said property at the Closing up to the full amount of the Allowed Vasos Secured Claim, in excess of the amounts necessary the pay all Real Estate Taxes at the Closing.

(a)    Full Settlement.  The treatment and consideration to be received by Vasos on account of its Allowed Claim in Class 1 shall be in full settlement and final satisfaction of its Claims against the Debtors; *provided, however*, Vasos does not waive and specifically preserves and retains the right to assert any deficiency claims against any third-party obligors.  Any deficiency claim shall be included in Class 2.

(b)    Classes 1 is Impaired under the Plan.

5.2.    Class 2:  General Unsecured Claims.

(a)    Treatment.  Class 2 consists of all Allowed General Unsecured Claims, including mechanics liens filed against the real property and any deficiency claim of Vasos. Each Holder of an Allowed Claim in Class 2 shall be entitled to receive its Pro Rata share of (i)

the Cash deposited into the Distribution Fund, if any, after payment in full to all Holders of the Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Priority Claims, if any and (ii) the General Unsecured Claim Class 2 Distribution Fund.  Subject to the terms hereof, any distribution to Holders of Allowed General Unsecured Claims in Class 2 shall be made as soon as reasonably practicable after the Closing.

(b)    Full Settlement.    The treatment and consideration to be received by Holders of Allowed Class 2 Claims shall be in full settlement and final satisfaction of their respective Claims.

(c)    Class 2 is Impaired under the Plan.

5.3.    Class 3: Interests.

Treatment.    Class 3 consists of Allowed Interests in the Debtors, including, without limitation, any Holders of options, warrants and other rights to acquire equity interests in the Debtors.  Class 3 consists of the allowed claim(s) of the shareholder(s) of the Debtors.  The shareholders shall not retain their interests in Debtors and shall receive no distribution unless all other classes are paid in full with interest. This class is impaired but is not entitle to vote under the Plan.  This Class is presumed to have rejected the Plan.

## ARTICLE VI

### Identification of Classes of Claims and
### Interests Impaired and Unimpaired Under The Plan

6.1.    Classes of Claims Impaired by the Plan and Entitled to Vote.  Holders of the Allowed Secured Claims of Vasos (Classes 1), Allowed General Unsecured Claims (Class 2), and Allowed Interests (Class 3) are Impaired and the Holders of Allowed Claims and Interests in such Classes are entitled to vote to accept or reject the Plan.

6.2.    Acceptance by an Impaired Class of Claims.  Consistent with section 1126(c) of the Bankruptcy Code, and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have timely and properly voted to accept or reject the Plan.

6.3.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code ("Cram Down").  With respect to any Impaired Class that does not accept the Plan or is deemed to have rejected the Plan pursuant to Section 1126(f) of the Bankruptcy Code, the Debtors intend to request that the Bankruptcy Court "cram down" such Classes and confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code.

## ARTICLE VII

## Controversy With Respect to Impairment

In the event of a controversy as to whether a Class of Claims or Interests is Impaired, the Court shall, after notice and a hearing, determine such controversy.

## ARTICLE VIII

## Unexpired Leases and Executory Contracts

8.1.     Assumption and Rejection of Executory Contracts and Unexpired Leases.  As of the Confirmation Date, any executory contract or unexpired lease that has not been expressly assumed or rejected with approval by order of the Bankruptcy Court shall be deemed to have been rejected unless (a) there is then pending before the Bankruptcy Court a motion to assume such unexpired lease or executory contract, or (b) the Bankruptcy Court has entered an order extending the period during which a motion may be made to assume such unexpired lease or executory contract, and such a motion is filed with the Bankruptcy Court before the expiration of such period.  The Disclosure Statement and the Plan shall constitute due and sufficient notice of the intention of Debtors to reject all executory contracts and unexpired leases that are not otherwise assumed.  The Confirmation Order shall be deemed an order under section 365(a) of the Bankruptcy Code rejecting any such executory contracts and unexpired leases that are not otherwise assumed.

8.2.     Bar Date for Rejection Damage Claims.  Unless otherwise provided for by an order of the Bankruptcy Court entered on or prior to the Confirmation Date, any Rejection Damage Claim for an executory contract or unexpired lease rejected by the Plan must be filed with the Bankruptcy Court within fifteen (15) days of the Confirmation Date.  Any Entity that fails to file its Rejection Damage Claim within the period set forth above shall be forever barred from asserting a Claim against the Debtors, the Estate, or any Property or interests in Property of the Debtors or the Post-confirmation Estate.  All Allowed Rejection Damage Claims shall be classified as General Unsecured Claims (Class 4) under the Plan.

## ARTICLE IX

## Means for Effectuating the Plan
## Implementation Of The Plan

9.1.     Sale of the Real Property in Accordance With the Auction Sale Procedures.

The Real Property shall be sold at the Auction in accordance with the Auction Sale Procedures (which are annexed hereto at Exhibit A) and the terms hereof, which shall govern all aspects of the sale.  There are two premises to be sold at sale.  Premises A is known as 266-270 Third Avenue, New York, New York.  Premises B is known as 276-280 Third Avenue, New York, New York, inclusive of all Air Rights and other Development Rights appurtenant to the 266 Third Parcel and the 276 Third Parcel (collectively, the "Development Parcels"), the

Development Rights appurtenant to 266 Third Avenue, 272 Third Avenue, 274 Third Avenue and 158 East 22nd Street, New York, New York (the "266/272/274/158 Development Rights").

**Seller previously entered into certain agreements dated March 27, 2008 (the "Existing Air Rights Agreements") for the option to purchase of the Inclusionary Air Rights from East 46th Street Development Company which consist of a total of 21,335 square feet (14,935 square feet and 6,400 square feet appurtenant to the parcel known as 228 East 46th Street, New York, N.Y.) of Inclusionary Air Rights. Seller hereby advises any Purchaser that the Existing Air Rights Agreements have terminated pursuant to their terms by reason of Seller's default thereunder and that Seller can no longer represent to Purchaser that it will be able to acquire the Inclusionary Air Rights or assign the Existing Air Rights Agreements to Purchaser and Purchaser shall acknowledge same.**

The full terms of the Sale are set forth in the Bid Procedures as approved by the Bankruptcy Court and are set forth in summary herein. Conveyance is in "all as presently exists" in "as is" "where is" condition "with all faults" except as specifically set forth in the Purchase Agreement. Each premises shall be auctioned separately and then a second auction shall occur where both Premises A and Premises B shall be auctioned collectively. Whichever sale, whether separately or collectively, shall bring in the highest total bid, then that method of sale shall be used.

(a)	If the Debtors receives by the Qualified Bidder Deadline one or more submissions that the Debtors deem in their discretion to be from a Qualified Bidder, then the Debtors will schedule the Auction, which shall be conducted at the offices of ____, at such date and time as shall be fixed pursuant to the provisions of the Confirmation Order, but in no event later than twenty (20) days after the Confirmation Date or such later date as may be agreed to in writing by the Debtors, or established in accordance with the Auction Sale Procedures. If the Debtors determine in their discretion that there are no submissions by Qualified Bidders by the Qualified Bidder Deadline, then Alchemy will be determined to be the Successful Bidder pursuant to its Opening Credit Bid.

(b)	Alchemy is deemed a Qualified Bidder with an initial bid in the amount of $27,500.000. If Alchemy shall be the Successful Bidder or otherwise entitled to acquire the Real Property in accordance with the Auction Sale Procedures, it shall have the right to assign its successful bid and the right to close thereunder at or prior to the Closing.

(c)	Stabfund and Vasos are deemed Qualified Bidders and may credit bid their Allowed Secured Claims on their own collateral.. If Stabfund and/or Vasos shall be the Successful Bidder(s) or otherwise entitled to acquire the Real Property in accordance with the Auction Sale Procedures, it shall have the right to assign its successful bid and the right to close thereunder at or prior to the Closing.

(d)	All Real Estate Taxes will be paid at the Closing from the proceeds of sale if any other Entity is determined to be the Successful Bidder or Back-up Bidder, if applicable, at the Auction and such other Entity consummates its acquisition of the Real Property at the Closing. There shall be an adjustment made at the Closing or the Back-up Closing, if applicable, for any Real Estate Taxes prepaid as of the date of the Closing.

(e)     The Confirmation Order shall contain appropriate provisions, consistent with section 1142(a) of the Bankruptcy Code, directing the Post-confirmation Debtors to execute or deliver or to join in the execution or delivery of any and all instruments required to effect a transfer of the Real Property and to perform any act, including the satisfaction of any Lien, that is necessary for the consummation of the Plan.

9.2.    <u>Transfer Taxes</u>.  The consummation of the Closing shall be deemed a transfer under, pursuant to, in connection with and in furtherance of the Plan, and such sale, transfer and delivery of any and all instruments of transfer, including without limitation the Deed, in connection therewith shall not be taxed under any Transfer Taxes permitted by § 1146(a) of the Bankruptcy Code as interpreted by the Supreme Court in <u>Florida Department of Revenue v. Piccadilly Cafeterias, Inc.</u>, 128 S.Ct. 2326 (2008).

9.3.    <u>Transfer of Assets</u>.  At the Closing, the Real Property shall be transferred to the Successful Bidder or, if for any reason the Successful Bidder shall fail to timely close the sale of the Real Property and the Post-confirmation Debtors, in their discretion determines to proceed with the Back-up Bid, the Back-up Bidder

9.4.    <u>Cooperation of Debtors</u>. The Debtors and the Post-confirmation Debtors and their authorized signatories shall, at all times, reasonably cooperate with the Successful Bidder or Back-up Bidder, if applicable, and any of their respective successors and assigns.

9.5.    <u>Funding</u>.  The funds needed to pay all U.S. Trustee Fees and the Allowed Administrative Expense Claim of Debtors' Professionals shall be paid from the Plan Contribution.  All other payments required to be made under the Plan, including without limitation, the Real Estate Taxes, shall be paid from the Closing proceeds in accordance with the terms of the Plan.

9.6.    <u>Management of the Debtors</u>. On and after the Effective Date, the Post-confirmation Estate will be managed by the Post-confirmation Debtors for the purpose of concluding the distributions under the Plan.

9.7.    <u>Execution of Documents</u>. The Post-confirmation Debtors shall execute, release and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of the Plan, including without limitation, any documents required in connection with the Closing and the sale of the Real Property in accordance with the Plan.

9.8.    <u>Filing of Documents</u>.  Pursuant to sections 105, 1141(c), 1142(b) and 1146(a) of the Bankruptcy Code, each and every federal, state and local governmental agency or department, shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

9.9.    <u>Transactions on Business Days</u>.  If the Effective Date or any other date on which

a transaction may occur under the Plan shall occur on a day that is not a Business Day, the transactions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day.

9.10.   <u>Implementation</u>.   Pursuant to the Confirmation Order and upon confirmation of the Plan, the Debtors and the Post-confirmation Debtors shall be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and provisions of the Plan.   On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate or further evidence the terms and provisions of the Plan and the other agreements referred to herein.   The Debtors and the Post-confirmation Debtors, as the case may be, are hereby authorized, and shall, execute such documents and take such other actions as are necessary to effectuate the transactions provided for in the Plan, without the need for any additional approvals, authorizations or consents.

9.11.   <u>Preservation and Vesting of Claims, Rights, Demands and Causes of Action</u>. Pursuant to section 1123 of the Bankruptcy Code, the Post-confirmation Debtors, on behalf of and for the benefit of the Post-confirmation Estate, shall be vested with, shall retain, and shall have the authority to prosecute and enforce any and all claims, controversies, agreements, promises, accounts, rights to legal remedies, rights to equitable remedies, rights, demands and Causes of Action of any kind or nature whatsoever held by, through, or on behalf of the Debtors and/or the Post-confirmation Estate, including, without limitation, all Causes of Action of a trustee and Debtors-in-possession under the Bankruptcy Code, including, without limitation, under sections 544, 545, 547, 548, and 549 of the Bankruptcy Code, against any other Entity arising before or after the Effective Date that have not been fully resolved or disposed of prior to the Effective Date, whether or not such Claims or Causes of Action are specifically identified in the Disclosure Statement accompanying the Plan and whether or not litigation with respect to same has been commenced prior to the Effective Date; *provided, however,* no such claims or Causes of Action exist against Vasos and no such litigation is anticipated.   The Post-confirmation Debtors will also be authorized to challenge, object to and/or settle disputed Claims, without first having to seek approval from the Bankruptcy Court, in accordance with the terms and provisions hereof.   The Post-confirmation Debtors will be authorized and empowered to bind the Post-confirmation Estate thereto.   Any settlement by the Post-confirmation Debtors pursuant to and in accordance with the terms hereof shall be conclusively deemed to be in the best interests of the Post-confirmation Estate.

9.12.   <u>Recoveries</u>.   All Cash, proceeds and/or recoveries from the Causes of Action and all other proceeds derived from the Post-confirmation Debtors' liquidation of the Post-confirmation Estate Assets will be included in the Post-confirmation Estate and administered and disbursed in accordance with the provisions of the Plan.

9.13.   <u>Dissolution of Debtors</u>.   Upon the completion of all acts required to be performed by the Post-confirmation Debtors under the Plan and/or the filing by or on behalf of the Post-confirmation Debtors of a certification to that effect with the Bankruptcy Court (which may be included in the application for entry of the final decree), the Debtors and/or Post-confirmation Debtors shall, in the Post-confirmation Debtors' discretion, be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtors,

the Post-confirmation Debtors or the Post-confirmation Estate, or payments to be made in connection therewith. From and after the Effective Date, the Debtors, the Post-confirmation Debtors shall not be required to file any document, or take any action, to withdraw the Post-confirmation Debtors' business operation from any State in which the Debtors previously conducted business operations; *provided, however,* that the Post-confirmation Debtors shall be authorized to file with the official public offices of keeping corporate records in the Debtors' state of incorporation or organization certificates of dissolution or equivalent documents. Such certificates of dissolution may be executed by the Post-confirmation Debtors without need for any action or approval by the members of the Debtors.

## ARTICLE X

### Distributions; Disputed Claims Reserve

10.1. <u>Post-confirmation Estate</u>. Except as otherwise provided in the Plan, on the Effective Date the Real Property and any other Property shall vest in the Post-confirmation Debtors pending the Closing, at which time the Real Property shall be transferred to the Entity acquiring the Real Property at the Closing. From time to time thereafter, other assets may be transferred to the Post-confirmation Estate and, upon conversion thereof to Cash, will be deposited into the Distribution Fund and distributed to Holders of Allowed Claims in accordance with the terms and provisions of the Plan.

10.2. <u>Timing of Distributions Due Under Plan</u>. (a) All Distributions and payments required of the Debtors and/or the Post-confirmation Debtors under the Plan to Holders of Allowed Claims will be paid from the Post-confirmation Estate on the dates, and in the manner indicated in the Plan. Except as otherwise provided in the Plan, without in any way limiting Sections 11.5 and 11.6 below, and subject to Section 14.2 below, Distributions in respect of (i) the Allowed Secured Claims in Classes 1a and 1b of the Plan shall be made by the Post-confirmation Debtors as set forth in Section 5.1; (ii) Allowed Mechanic's Lien Secured Claims in Class 2 of the Plan shall be made by the Post-confirmation Debtors as set forth in Section 5.2; (iii) Allowed Priority Claims in Class 3 of the Plan shall be made by the Post-confirmation Debtors as set forth in Section 5.3; (iv) Allowed General Unsecured Claims in Class 4 of the Plan shall be made by the Post-confirmation Debtors as set forth in Section 5.4; and (iv) all other Allowed Claims or Interests that are required by the Plan to be made on the Effective Date shall be made by the Post-confirmation Debtors from the Post-confirmation Estate Assets on, or as soon as practicable following, the Closing or the date such Claims become Allowed Claims.

10.3. <u>Manner of Distributions</u>. At the option of the Post-confirmation Debtors, Distributions from the Post-confirmation Estate may be made by wire transfer, check, or such other method as the Post-confirmation Debtors deems appropriate under the circumstances. No Distributions shall be required to be made to any Holder of an Allowed Claim in an amount less than fifty ($50.00) dollars, unless request is made, in writing, to the Post-confirmation Debtors.

10.4. <u>Cash Payments</u>. Cash payments made pursuant to the Plan will be in U.S. dollars. Cash payments made pursuant to the Plan in the form of checks issued by the Debtors or the Post-confirmation Debtors shall be void if not cashed within one hundred twenty (120) days of

the date of the issuance. Requests for reissuance of any check shall be made directly to Post-confirmation Debtors or their designee as set forth in Section 10.9 below.

10.5. <u>Disputed Claims Reserve</u>. (a) Within five (5) Business Days of the Closing Date, the Debtors shall establish the Disputed Claims Reserve, as necessary and applicable. For purposes of establishing the Disputed Claims Reserve, the Post-confirmation Debtors shall reserve for each Disputed Claim at the Maximum Amount. On the date of any Distribution, the Post-confirmation Debtors shall deposit into the Disputed Claims Reserve Cash equal to the amount that would be distributable to all Holders of Disputed Claims in respect of all Distributions made on that date, if such Disputed Claims were Allowed in the respective Maximum Amounts. The Post-confirmation Debtors shall maintain the Disputed Claims Reserve in a segregated, interest bearing account and shall keep records as to the applicable amounts reserved in respect of each Disputed Claim. The Post-confirmation Debtors shall pay any taxes due and owing with respect to the Disputed Claims Reserve, and reserve all Distributions on account of the Disputed Claims, net of such taxes; *provided, however,* that the Post-confirmation Debtors may contest in good faith any tax that any taxing authority determines is owed by the Post-confirmation Estate.

(b) In the event any Disputed Claim becomes an Allowed Claim, the amount of such Allowed Claim shall never exceed the Maximum Amount and the Post-confirmation Debtors shall distribute to the Holder of such Allowed Claim from the Disputed Claims Reserve the aggregate amount of Cash that such Holder would have received through the date of such Distribution in respect of such Disputed Claim as if such Claim has been an Allowed Claim as of the Effective Date.

(c) From time to time as Disputed Claims are Disallowed or become Allowed Claims in amounts less than its respective Maximum Amounts, the Cash deposited in the Disputed Claims Reserve that otherwise would have been distributed to the holders of such Disputed Claims if such Disputed Claims subsequently had become Allowed Claims in an amount equal to their respective Maximum Amounts (and which as a result is not distributable to such Holders pursuant to this Section 11.3) shall be released from and no longer held in the Disputed Claims Reserve and, subject to the provisions of Sections 10.2, 11.5 and 11.6, shall be distributed in accordance with this Section 10.5.

10.6. <u>Payment of Statutory Fees</u>. All fees payable pursuant to 28 U.S.C. § 1930 as determined by the Bankruptcy Court as of the Confirmation Date shall be paid by the Debtors or the Post-confirmation Debtors on or before the Effective Date from the Plan Contribution and/or Post-confirmation Estate until the entry of a Final Decree in this case.

10.7. <u>No Interest</u>. Except with respect to Holders of Unimpaired Claims entitled to interest under applicable non-bankruptcy law or as otherwise expressly provided herein, no Holder of an Allowed Claim, including, without limitation, Holders of Allowed General Unsecured Claims under Class 4 of the Plan shall receive interest on any Distribution to which such Holder is entitled hereunder, regardless of whether such Distribution is made on the Effective Date or thereafter.

10.8.  Withholding of Taxes.  (a) The Post-confirmation Debtors may withhold from any Cash or Property to be distributed under the Plan any Cash or Property which must be withheld for taxes payable by the Entity entitled to such Distribution to the extent required by applicable law.  As a condition to making any Distribution under the Plan, the Post-confirmation Debtors may request that the Holder of any Allowed Claim provide such Holder's taxpayer identification number and such other certification as may be deemed necessary to comply with applicable tax reporting and withholding laws.

(b)  Notwithstanding any other provision of the Plan, each Entity receiving a Distribution of Cash pursuant to the Plan will have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on it by any governmental unit on account of such Distribution, including income, withholding and other tax obligations.

10.9.  Undeliverable or Unclaimed Distributions.  (a)  All Distributions under the Plan to any Holder of an Allowed Claim shall be made at the address of such Holder as set forth on the lists to be provided by the Debtors to the Post-confirmation Debtors unless the Post-confirmation Debtors have been notified in writing after the Effective Date of a change of address.  Any Entity that is entitled to receive a Cash Distribution under the Plan but that fails to cash a check within one hundred twenty (120) days of its issuance shall be entitled to receive a reissued check from the Post-confirmation Debtors for the amount of the original check, without any interest, if such Entity (i) requests, in writing, the Post-confirmation Debtors to reissue such check, and (ii) provides the Post-confirmation Debtors with such documentation as the Post-confirmation Debtors request to verify in her/his sole discretion that such Entity is entitled to such check.  If an Entity fails to cash any check within one hundred twenty (120) days of its issuance or fails to request re-issuance of such check within one hundred twenty (120) days of its issuance, such Entity shall be deemed to have forfeited the amount of the Distribution or Post-confirmation Estate provided for in such check.  Any such forfeited Distributions shall revert to the Post-confirmation Estate and the Claim of any Holder or successor to such Holder with respect to such forfeited Distributions shall be discharged and forever barred, notwithstanding any other provisions in the Plan or any federal or state escheat laws to the contrary.

(b)  In the event that any Distribution to any Holder of an Allowed Claim is returned to the Post-confirmation Debtors as undeliverable, no further Distributions will be made to such Holder unless and until the Post-confirmation Debtors is notified in writing of such Holder's then-current address.  All claims for undeliverable Distributions for which no check is issued, must be made within one hundred twenty (120) days of the issuance of the original check. After such date, all unclaimed Distributions shall revert to the Post-confirmation Estate and the claim of any Holder or successor to such Holder with respect to such Distribution shall be forfeited, discharged and forever barred, notwithstanding any provisions in the Plan or any federal or state escheat laws to the contrary.  Upon such forfeiture of Cash or other Post-confirmation Estate property, such Cash or Post-confirmation Estate Assets shall be the Real Property of the Post-confirmation Estate.

10.10.  Post Effective Date Services by Professionals.  The Professionals retained by the Debtors shall continue to be retained subsequent to the Effective Date for the purpose of rendering services as necessary to consummate the Plan, which services shall include the liquidation of Post-confirmation Estate Assets, objecting to Disputed Claims and effecting

Distributions on Allowed Claims.

The reasonable fees and expenses of the Debtors' Professionals incurred after the Confirmation Date shall constitute Operating Expenses of the Post-confirmation Estate and shall be payable upon presentment of a monthly statement for services rendered and for reimbursement of expenses to the Post-confirmation Debtors. The Post-confirmation Debtors shall have ten (10) days from the receipt of any such fee and expense statements to dispute all or part of such statement. Upon the expiration of said ten (10) days, the Post-confirmation Debtors shall pay the professionals the undisputed portion of such fees and expenses. Any disputes shall be submitted to the Bankruptcy Court for determination. A law firm, accountant or other Professional shall not be disqualified from representing or otherwise serving the Post-confirmation Debtors or the Post-confirmation Estate solely because of its current or prior retention as counsel or professional to the parties in interest in the Chapter 11 Case, including, without limitation, counsel to the Debtors.

## ARTICLE XI

### Procedures for Resolving Disputed Claims

11.1. <u>Objections to Claims</u>. The Debtors shall have until the Effective Date and, after the Effective Date, the Post-confirmation Debtors (by and through their retained professionals) shall have the authority to file, settle, compromise, withdraw or litigate to judgment objections to Claims. Subject to an order of the Bankruptcy Court providing otherwise, the Post-confirmation Debtors may object to a Claim by filing an objection with the Bankruptcy Court and serving such objection upon the Holder of such Claim not later than ninety (90) days after the Effective Date or ninety (90) days after the filing of the proof of such Claim, whichever is later, or such other date fixed by the Bankruptcy Court.

11.2. <u>Procedure</u>. Unless otherwise ordered by the Bankruptcy Court or agreed to by written stipulation of the Post-confirmation Debtors, or until an objection thereto by the Post-confirmation Debtors is withdrawn, the Post-confirmation Debtors (by and through their retained professionals as set forth in Section 11.1 hereof) may litigate the merits of each Disputed Claim until a Final Order is entered with respect to such Claim; *provided, however*, that (a) prior to the Effective Date, the Debtors, subject to the approval of the Bankruptcy Court, and (b) after the Effective Date, the Post-confirmation Debtors, may compromise and settle any objection to any Claim.

11.3. <u>Payments and Distributions With Respect to Disputed Claims</u>. No payments or Distributions shall be made in respect of any Disputed Claim until such Disputed Claim becomes an Allowed Claim.

11.4. <u>Claims Reserve - Estimation</u>. For purposes of effectuating the reserve provisions of the Plan, and the allocations and Distributions to Holders of Allowed Claims, the Bankruptcy Court may, on or prior to the Effective Date, or such later date as may be established by the Bankruptcy Court and/or the Post-confirmation Debtors, pursuant to section 502 of the Bankruptcy Code, fix or liquidate the amount of any contingent or unliquidated Claim, in which

event the amount so fixed will be deemed the Allowed Amount of such Claim for purposes of the Plan or, in lieu thereof, the Bankruptcy Court will determine the maximum contingent or unliquidated amount for such Claim, which amount will be the Maximum Amount in which such Claim ultimately may be Allowed under the Plan, if such Claim is Allowed in whole or in part. The Bankruptcy Court's entry of the Confirmation Order or any such estimation order may limit the Distribution to be made on individual Disputed Claims, regardless of the amount finally Allowed on account of such Disputed Claims, and no Holder shall have recourse against the Post-confirmation Estate, the Debtors, the Post-confirmation Debtors or any of their respective Professionals, professional consultants, attorneys, advisors, officers, directors, employees, members or their successors or assigns, or any of their respective property, as such Holder's sole recovery shall be from the Distributions to be made to Holders of Allowed Claims.

11.5.   <u>Distributions After Allowance of Disputed Claims</u>.  Distributions to each Holder of a Disputed Claim, to the extent that such Claim ultimately becomes an Allowed Claim, will be made in accordance with the provisions of the Plan.

11.6.   <u>Distributions After Disallowance of Disputed Claims</u>.   Holders of Allowed Claims under the Plan that receive Distributions after Allowance of such Holder's Claim, may receive subsequent Distributions if and to the extent that other General Unsecured Claims are disallowed or expunged or as Post-confirmation Estate Assets are sold and converted to Cash. Such subsequent Distributions will be included with the next Distributions due to be paid to Holders of Allowed Claims pursuant to and in accordance with Article V of the Plan.

11.7.   <u>Setoffs and Recoupments</u>.  Except with respect to Causes of Action of any nature released or allowed pursuant to the Plan or Confirmation Order, the Debtors, the Post-confirmation Debtors or their designee as instructed by them may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off or recoup against any Allowed Claim, the Distributions to be made pursuant to the Plan on account of such Claim, any Causes of Action of any nature that the Debtors, the Post-confirmation Estate, the Post-confirmation Debtors or their successors may hold against the Holder of such Allowed Claim; provided that neither the failure to effect a setoff or recoupment nor the allowance of any Claim hereunder will constitute a waiver or release by the Debtors, the Post-confirmation Estate, or the Post-confirmation Debtors or their successors, of any Causes of Action that the Debtors, the Post-confirmation Estate, or the Post-confirmation Debtors or their successors may possess against such Holder.

## **ARTICLE XII**

## **Injunction, Release and Exculpation**

12.1.   <u>Injunction</u>.   Except as otherwise provided in or to enforce the Plan or Confirmation Order, on or after the Effective Date all Entities that have held, currently hold, or may hold, a Claim, Lien, Interest or other liability against or in the Debtors that would be discharged or satisfied upon confirmation of the Plan and the Effective Date but for the provisions of Bankruptcy Code § 1141(d)(3) are permanently enjoined from taking any of the following actions on account of such Claim, Lien, Interest or right: (a) commencing or

continuing in any manner any action or other proceeding on account of such Claim, Lien, Interest, or right against the Post-confirmation Estate, Post-confirmation Estate Assets, any Property that is to be distributed under the Plan, or the Post-confirmation Debtors; or (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against the Post-confirmation Estate, Post-confirmation Estate Assets, any Property to be distributed under the Plan, or the Post-confirmation Debtors.

On and after the Effective Date, each Holder of an Interest in the Debtors is permanently enjoined from taking or participating in any action that would interfere with or otherwise hinder the post-confirmation Debtors or Post-confirmation Debtors from implementing the Plan or the Confirmation Order.

Except as otherwise provided in the Plan or the Confirmation Order, on or after the Effective Date all Creditors of, Claimants against, Interest Holders of, and Entities having or claiming an interest of any nature in the Post-confirmation Estate are hereby permanently enjoined and stayed from pursuing or attempting to pursue any action, commencing or continuing any action, employing any process, or any act against the Post-confirmation Estate, Post-confirmation Estate Assets, any Property that is to be distributed under the Plan, or the Post-confirmation Debtors on account of or based upon any right, claim or interest which any such Creditor, Claimant, Interest Holder, or other Entity may have had prior to the entry of the Confirmation Order.

12.2. **Release. Except as otherwise specifically provided herein, including, without limitation, the reservation and retention of the rights of Vasos to assert any deficiency claims it has against any third-party obligors, confirmation of the Plan (subject to the occurrence of the Effective Date) shall, as to all Holders of Claims and Interest who vote in favor of the Plan, release the Debtors' officers, directors, employees, and other agents, financial advisors, consultants, attorneys, , provided, however, with respect to the professionals, that nothing herein shall contravene the requirements of 1.8(h)(1) of the New York State Rules of Professional Conduct, and accountants (in such capacity), and their respective assets and properties from any debt, charge, Causes of Action, liability, encumbrance, Lien, security interest, Claim, Interest, or other cause of action of any kind, nature or description (including, but not limited to, any claim of successor liability), other than a right to pursue a claim based on any gross negligence or willful misconduct, including any breach of fiduciary duty constituting gross negligence or willful misconduct, that arose before the Confirmation Date, and any debt of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not a proof of Claim or Interest is or could have been filed or is deemed filed, and whether or not such Claim or Interest is or could have been Allowed.**

12.3. **Exculpation. In consideration of the Distributions under the Plan, upon the Effective Date, each Holder of a Claim or Interest will be deemed to have released the Debtors, and each of their directors, partners, members, officers, agents, consultants, attorneys, independent accountants, advisors, Professionals, financial advisors, investment bankers and employees (in such capacity), employed by the Debtors from and after the Filing Date from any and all Causes of Action (other than the right to enforce the**

**obligations under the Plan and the right to pursue a claim based on any gross negligence or willful misconduct, including any breach of fiduciary duty constituting gross negligence or willful misconduct) arising out of actions or omissions during the administration of the Chapter 11 Case, the administration of the Estate and/or the Post-confirmation Estate, or the Distribution of any Property or Post-confirmation Estate Assets pursuant to the Plan.**

## ARTICLE XIII

### Conditions Precedent to the Confirmation
### Order and the Effective Date of the Plan

13.1.    <u>Condition Precedent to Entry of the Confirmation Order</u>.  The following condition must be satisfied on or before the Confirmation Date:  The Confirmation Order must be in form and substance reasonably acceptable to the Debtors.

13.2.    <u>Conditions Precedent to the Effective Date</u>.  The following conditions must be fully satisfied or waived, if subject to waiver, on or before the Effective Date for the Plan to become effective, the satisfaction of which shall constitute Consummation of the Plan:

(a)    the Confirmation Order must be entered by the Bankruptcy Court and become a Final Order; and

(b)    the Purchaser shall have delivered the Plan Contribution to the Debtors.

13.3.    <u>Debtors' Right to Waive Conditions Precedent</u>.  The Debtors, in their sole discretion, may waive the Final Order condition of the foregoing Section 13.2 at any time from and after the Confirmation Date.  In that event, the Debtors will be entitled to render any or all of their performances under the Plan prior to what otherwise would be the Effective Date if the above-referenced conditions were not waived, including, but not limited to, the right to perform under any circumstances which would moot any appeal, review or other challenge of any kind to the Confirmation Order if the Confirmation Order is not stayed pending such appeal, review or other challenge.

## ARTICLE XIV

### Miscellaneous Provisions

14.1.    <u>Bankruptcy Court to Retain Jurisdiction</u>.  Notwithstanding entry of the Confirmation Order, or the occurrence of the Effective Date or Consummation of the Plan, the Chapter 11 Case having been closed, or a Final Decree having been entered, the Bankruptcy Court (or the District Court, as the case may be) shall have and retain jurisdiction of matters arising out of, and related to the Chapter 11 Case and the Plan under, and for the purposes of, Bankruptcy Code §§ 105(a), 1127, 1142 and 1144 and for, among other things, the following purposes:

(a)    To consider any modification of the Plan under Bankruptcy Code § 1127

and/or modification of the Plan before "substantial consummation" as defined in Bankruptcy Code § 1101(2), and to consider any modification of the Plan to cure any defect or omission, or reconcile any inconsistency in the Plan, the Disclosure Statement or in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order.

(b)     To hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any, and allowance of Claims resulting therefrom.

(c)     To (i) hear and determine any Claim or Cause of Action arising in or related to the Chapter 11 Case; and (ii) to adjudicate any Causes of Action or other proceedings currently pending or which may be commenced by the Post-confirmation Debtors after the Effective Date or otherwise referenced herein or elsewhere in the Plan, including, but not limited to, the adjudication of any Causes of Action and any and all "core proceedings" under 28 U.S.C. § 157(b), which are or may be pertinent to the Chapter 11 Case and which the Post-confirmation Debtors may deem appropriate to commence and prosecute in support of implementation of the Plan.

(d)     To determine any and all adversary proceedings, applications, and contested matters filed or commenced by the Post-confirmation Debtors after the Effective Date, including, without limitation, any Causes of Action.

(e)     To ensure that Distributions are accomplished as provided in the Plan.

(f)     To hear and determine any objections to Administrative Expense Claims, to Proofs of Claim, or to Claims and Interests filed and/or asserted both before and after the Confirmation Date, including any objections to the classification of any Claim or Interest, and to allow or disallow any disputed Administrative Expense Claim, Claim or Interest, in whole or in part, and any request for estimation of Claims.

(g)     To protect the Post-confirmation Estate from adverse Claims or interference inconsistent with the Plan, including to hear actions to quiet or otherwise clear title to such property of the Post-confirmation Estate based upon the terms and provisions of the Plan, including, without limitation, with respect to the Real Property.

(h)     To (i) enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated; (ii) to issue such orders in aid of execution of the Plan as may be necessary and appropriate, to the extent authorized by Bankruptcy Code § 1142; and (iii) to interpret and enforce any Orders previously entered in the Chapter 11 Case to the extent such Orders are not superseded or inconsistent with the Plan.

(i)     To hear and determine all applications for compensation and reimbursement of expenses of Professionals under Bankruptcy Code §§ 330, 331, and 503(b) for services rendered and expenses incurred prior or subsequent to the Confirmation Date.

(j)     To hear and determine all litigation, Causes of Action and all controversies, suits and disputes that may arise in connection with the interpretation, implementation or enforcement of the Plan, including but not limited to, any and all litigation and/or Causes of Action brought by the Debtors, whether such litigation and/or Causes of Action is/are commenced either prior to or after the Effective Date.

(k)     To hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code §§ 345, 505, and 1146.

(l)     To enter a Final Decree closing the Chapter 11 Case.

(m)     To consider and act on the compromise and settlement of any litigation, Claim against or Cause of Action asserted in connection with the Chapter 11 Case or the Post-confirmation Estate.

(n)     To hear and determine all matters and disputes relating to the Auction and the Closing.

(o)     Without limiting the generality of the foregoing and notwithstanding the Effective Date and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over the Post-confirmation Estate after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits and issues that may arise in connection herewith or therewith, including, without limitation, any Entities' obligations incurred in connection herewith or therewith, including without limitation, any action against the Post-confirmation Debtors or any or all of the Post-confirmation Debtors' professionals or the Post-confirmation Estate, and any action seeking turn over or recovery of assets included in the Post-confirmation Estate.

14.2.     Binding Effect of the Plan.  Nothing contained in the Plan or the Disclosure Statement will limit the effect of confirmation as set forth in Bankruptcy Code §1141.  The provisions of the Plan shall be binding upon and inure to the benefit of the Debtors, the Post-confirmation Debtors, any Holder of a Claim or Interest, or their respective predecessors, successors, assigns, agents, officers, managers, members and directors and any other Entity affected by the Plan.

14.3.     Fractional Cents.  Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

14.4.     Successors and Assigns.  The rights and obligations of any Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Entity.

14.5.     Blank Ballots.  Any Ballot which is executed by the Holder of an Allowed Claim but which does not indicate an acceptance or rejection of the Plan shall be deemed to be an

acceptance of the Plan.  Any Ballot not filed in accordance with the filing instructions on the ballot pertaining to the Plan shall not be counted for voting purposes.

14.6.  <u>Authorization of Corporate Action</u>.  Upon the entry of the Confirmation Order, all actions contemplated by the Plan will be deemed authorized and approved in all respects (subject to the provisions of the Plan), including, without limitation, the transfer and/or contribution of the Post-confirmation Estate Assets.  On the Confirmation Date, appropriate members or authorized signatories of the Debtors and the Post-confirmation Debtors are authorized and directed to execute and to deliver any and all agreements, documents and instruments contemplated by the Plan, the Post-confirmation Estate and/or necessary for the consummation of the Plan, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without the need for any additional authorizations, approvals or consents.

14.7.  <u>Withdrawal of the Plan</u>.  The Debtors reserves the right, at any time prior to the entry of the Confirmation Order, to revoke or withdraw the Plan.  If the Debtors revoke or withdraws the Plan, or if the Confirmation Date does not occur, or if the Effective Date does not occur then (a) the Plan will be deemed null and void and (b) the Plan shall be of no effect and shall be deemed vacated, and the Chapter 11 Case shall continue as if the Plan had never been filed and, in such event, the rights of any Holder of a Claim or Interest shall not be affected nor shall such Holder be bound by, for purposes of illustration only, and without limitation, (i) the Plan, (ii) any statement, admission, commitment, valuation or representation contained in the Plan, the Disclosure Statement, or the Related Documents or (iii) the classification and proposed treatment (including any allowance) of any Claim in the Plan.

14.8.  <u>Captions</u>.  Article and Section captions used in the Plan are for convenience only and will not affect the construction of the Plan.

14.9.  <u>Method of Notice</u>.  Any notice or other communication hereunder shall be in writing (including by facsimile transmission or by e-mail) and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box addressed to the person for whom such notice is intended (or, in the case of notice by facsimile transmission or e-mail, when received and telephonically or electronically confirmed), addressed as follows (provided, however, that only one notice or other communication hereunder need be sent to Holders sharing the same address):

If to the Debtors, to:

LT 266 THIRD AVENUE, LLC
3189 Lafayette Street, Suite 255
New York, New York

NK 266 THIRD AVENUE, LLC
3189 Lafayette Street, Suite 255
New York, New York

With a copy to:

Law Offices of Avrum J. Rosen, PLLC
38 New Street
Huntington, New York 11743
Attn: Avrum J. Rosen, PLLC

If to Vasos (USA) Inc.:
c/o Gregory Messer, Esq., 26 Court Street, Brooklyn, New York 11242

Any of the above may, from time to time, change their address for future notices and other communications hereunder by filing a notice of the change of address with the Bankruptcy Court.

14.10.  <u>Amendments and Modifications to Plan</u>.  The Plan may be altered, amended or modified by the Debtors, before or after the Confirmation Date, as provided in section 1127 of the Bankruptcy Code.  The Debtors may also seek to modify the Plan at any time after confirmation so long as (a) the Plan has not been substantially consummated and (b) the Bankruptcy Court authorizes the proposed modification after notice and a hearing.  The Debtors further reserve the right to modify the treatment of any Allowed Claims at any time after the Effective Date upon the consent of the Creditor whose Allowed Claim treatment is being modified, so long as no other Creditors are materially adversely affected.

14.11.  <u>Section 1125(e) of the Bankruptcy Code</u>.  Confirmation of the Plan will constitute a finding that the Debtors (and each of their Affiliates, agents, directors, officers, employees, advisors, Professionals, and attorneys) have proposed and solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

14.12.  <u>Entire Agreement</u>.      The Plan, as described herein, and the Disclosure Statement and exhibits thereto set forth the entire agreement and understanding of the parties hereto relating to the subject matter hereof and supersede all prior discussions and documents.  No party hereto shall be bound by any terms, conditions, definitions, warrants, understandings or representations with respect to the subject matter hereof, other than as is expressly provided for herein or as may hereafter be agreed to by the parties in writing.

14.13.  Post-Confirmation Obligations.  Under current applicable law, the Debtors and, after the Effective Date, the Post-confirmation Debtors, for and on behalf of the Post-confirmation Estate, is required to pay fees assessed against Debtors' Estate under U.S.C. § 1930(a)(6) until entry of an order closing the Chapter 11 Case.  Subject to a change in applicable law, the Post-confirmation Debtors shall pay all fees assessed against the Estate under 28 U.S.C. §1930(a)(6) from the Post-confirmation Estate and shall file post-confirmation reports until entry of an order closing the Chapter 11 Case of Debtors.

Dated: Huntington, New York
      April 14, 2011

LT 266 THIRD AVENUE, LLC

By: */s/ Leonard Taub*
Name: Leonard Taub
Title:  Authorized Signatory

NK 266 THIRD AVENUE, LLC

By:  */s/ Norman Kaish*
Name: Norman Kaish
Title:  Authorized Signatory

Prepared By:

LAW OFFICES OF AVRUM J. ROSEN, PLLC

By:  */s/ Avrum J. Rosen*
      Avrum J. Rosen, Esq.
      38 New Street
      Huntington, New York 11743
      (631) 423-8527

*Attorneys for Debtors and Debtors in Possession*